Filed 11/23/20  P. v. Galloway CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B303405, B303636 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA071844) |
| v. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING (NO CHANGE IN JUDGMENT) |
| JAYVION TERRELL GALLOWAY, | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on October 28, 2020 is modified as follows:

1.      The following citations are deleted from page 13: "*People v. Drayton* (2020) 47 Cal.App.5th 965, 975–976; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177–1178, review granted June 24, 2020, S262011."

2.      On page 15, line 4, the words "meetings under these conditions" are replaced with the words "appearances in court" so the entire sentence now reads:  After approximately 23 appearances in court before and during trial, the defendant challenged the court's jurisdiction to issue the order for the first time on appeal.

3.      In the last paragraph on page 15, the following citation "(§ 1202.4, subd. (c); Stats. 2007, ch. 302, § 14, p. 3072 [version of statute in effect in 2008].)" is revised to read:

(§ 1202.4, subd. (c); accord, Stats. 2007, ch. 302, § 14, p. 3072 [version of statute in effect in 2008].)

These modifications do not constitute a change in the judgment.

Appellant's petition for rehearing filed on November 12, 2020 is denied.

_____

ROTHSCHILD, P. J.          CHANEY, J.          SINANIAN, J.*

_____

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/28/20  P. v. Galloway CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B303405, B303636 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA071844) |
| v. | |
| JAYVION TERRELL GALLOWAY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed (B303405).  Dismissed (B303636).

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

In this opinion we address two separate appeals filed by defendant and appellant Jayvion Terrell Galloway. In the first appeal, Galloway challenges the trial court's denial of his petition under Penal Code section 1170.95[1] for resentencing on his murder conviction. In 2011, a jury convicted Galloway of murder for shooting and killing a victim in the course of a robbery. The jury also found true a felony-murder special circumstance. (§ 190.2, subd. (a)(17).) The trial court summarily denied the petition on the ground that Galloway was the actual killer, could still be convicted of murder, and was therefore ineligible for resentencing under section 1170.95. Galloway contends that the trial court erred by denying his petition without first appointing counsel to represent him, and by relying on the record of his conviction, including this court's prior opinion in the case, as a basis for denying the petition. We disagree and affirm.

In the second appeal, Galloway contends that the trial court erred by denying his motion to reduce his restitution fine. We reject this claim as well and dismiss the appeal because the trial court lacked jurisdiction to consider Galloway's motion.

### FACTS AND PROCEEDINGS BELOW

The facts of the case are discussed below as described in our opinion in Galloway's direct appeal (*People v. Galloway* (June 8, 2012, B232165) [nonpub. opn.] (*Galloway*)). Galloway was tried alongside codefendant Zecorey Lamont Marcus.

---

[1] Subsequent statutory references are to the Penal Code.

2

### A.    *The Robbery of Pedro Guerrero in May 2008*

"Anna Sanchez, a friend of defendants Galloway and Marcus, testified that she drove defendants to a convenience store in Gardena and waited for them in her car while they went into the store to buy rolling papers for marijuana and orange juice.  After a short time, Galloway came out of the store and told Sanchez to park her car across the street because he was going to rob a man he had seen in the store cashing a check.  Moments after Sanchez moved her car, defendants came running toward her.  Galloway was holding a black revolver.  Defendants jumped into Sanchez's car and Galloway told Sanchez: 'Go, go, go.'  Sanchez drove away as Galloway handed the gun to Marcus in the backseat.  She asked them what happened 'and they said they robbed the man that was in the store cashing his check.'  Sanchez identified defendants from a surveillance video shot from within the store.

"Pedro Guerrero testified that he went to a store in Gardena to cash a check for $450.00.  As he sat in his car, putting away his money, two men walked up.  One man pointed a black gun at Guerrero's head.  'They told me to give them the money or that they would kill me,' Guerrero testified.  Guerrero gave the money to the man with the handgun.  He did not report the robbery to police because he was afraid but he told the storekeeper about it.  A week later the police located Guerrero and showed him photographic lineups and he identified a photograph of Galloway as the man who robbed him with a handgun." (*Galloway, supra,* B232165, at p. 2.)

### B.    *The Murder of Hae Sook Roh in May 2008*

"Five days after the Guerrero robbery, at approximately 6:45 p.m., Arthenia Thomas heard gunfire coming from the

3

direction of a T-shirt shop in Gardena and saw two men running from the shop and down the street toward a restaurant where she lost sight of them.  Her only description of the two men was that they were wearing black 'hoodies' and had bandanas over their faces.  A few minutes later a silver four-door car drove 'really fast' out of the restaurant parking lot.  Because the windows were tinted, Thomas could not tell how many people were in the car. Thomas testified that the car depicted in People's exhibit 4 looked like the car she saw leaving the parking lot.

"When the police responded to the shooting, they found the body of Hae Sook Roh, who had worked at the T-shirt shop, lying dead behind the counter near the cash register.

"The prosecution showed the jury an audio and video recording from a surveillance camera in the T-shirt shop.  The video showed a black male with a gun in his left hand entering the area in front of the cash register.  The man wore white pants, a long white T-shirt and an open waist-length jacket.  He had a white cloth tied across his face below his eyes.  The bottom left hand portion of the video showed the pant leg and shoe of a second person.  The audio portion of the tape contained the voice of the man with the gun saying:  'Give it up.  Give it up. Give me the money.'  A second voice said[,] 'Give him the money' and then the gunman fired at Roh saying, 'Bitch.  Give it up.' He repeated[,] 'Give it up' and then shot Roh two more times, grabbed the money from the register and ran.  The gun was not recovered.  The take from the robbery-murder was approximately $35.

"Sanchez testified that she was at Galloway's house on the day of the murder.  When it started to get dark, Galloway went to the trunk of his mother's car and changed into basketball

4

shorts, a white T-shirt and waist-length jacket.  He then began waiting in front of the house.  A gray Chevrolet Impala with tinted windows pulled up in front of the house.  Someone inside the car opened the back door, and as Galloway got in, Sanchez saw Marcus lean over.  Sanchez identified the car shown in the People's exhibit 4 as the car she saw that evening.  The same car returned to Galloway's house 20 to 30 minutes later and Galloway got out.  Sanchez observed that Galloway was breathing heavily, his palms were sweating and he was acting 'like he was nervous and scared.'  Galloway told her that 'he shot a lady at the T-shirt place.'  He 'started laughing like it was funny' and said 'the bitch wouldn't die.  So he just had to keep shooting her.'  Sanchez asked Galloway why he shot the lady and Galloway replied that he was mad because he wanted to rob the store but 'right before he walked in, she dropped the money [in the floor safe] [a]nd so he shot her.'

"A few days later Galloway showed Sanchez a YouTube video of the murder and robbery at the T-shirt shop.  He laughed again while he watched it.  Sanchez recognized Galloway on the video because he was wearing the same clothes he wore when he left his mother's house the evening of the murder.  She also recognized the gun in the video as the gun Galloway had used in the robbery of Pedro Guerrero." (*Galloway*, *supra*, B232165, at pp. 3–4.)

### C.    *The Defendants' Custodial Statements*

"After defendants were arrested, they were seated next to each other on a bench in a hall of the jail.  The bench had a hidden recording device.  The prosecution played the recording of the defendants' conversation to the jury.  In that conversation Galloway told Marcus that the police showed him a picture

5

of Marcus inside the store just before the Guerrero robbery. Marcus acknowledge[d] he [would] have to serve 15 years for the robbery but told Galloway that if he got bailed out 'I'm gone.' Galloway told Marcus not to worry because he admitted the robbery and told the police Marcus had nothing to do with it and that he didn't even know Marcus. Later in the conversation, Galloway admitted his involvement in the murder. Marcus also admitted being at the scene of the murder, noting that the video showed him wearing the same shoes that he was wearing when he was arrested." (*Galloway*, *supra*, B232165, at p. 4.)

### D.    *The Credibility of Sanchez*

"Sanchez admitted she played a role in the robbery of Guerrero, that she pleaded guilty to that crime, that she was in custody at the time of her trial testimony and that she was receiving lenient treatment in her sentencing in exchange for her testimony against defendants. She also admitted that she had previously been convicted of forgery and the unlawful taking of a motor vehicle.

"Sanchez further admitted that she had been a regular user of marijuana for six to nine months prior to the murder of Roh; that she 'smoke[d it] every day;' and that she had smoked marijuana just before the Guerrero robbery and was feeling 'mellow' at the time. Sanchez testified that she smoked a type of marijuana known as 'Chronic' which, she agreed, is a 'particularly potent' and 'intense' form of the drug. In addition to smoking marijuana, Sanchez stated that on weekends she used Ecstasy. ([This court took] judicial notice that the T-shirt robbery and murder were not committed on a weekend.) She testified that she stopped using any drugs after May 12, 2008, the date of the robbery-murder.

6

"The defense called a forensic toxicologist who testified that in his opinion someone who smoked Chronic every day over a six- to nine-month period would suffer from confusion, delusion and 'disoriented perception.' " (*Galloway*, *supra*, B232165, at p. 5.)

### E. *Sentencing and Post-Trial Proceedings*

A jury convicted Galloway of one count of first degree murder (§ 187, subd. (a)), and found true a felony-murder special circumstance allegation (§ 190.2, subd. (a)(17)). The jury also convicted him of two counts of robbery (§ 211) and one count of illegal possession of a firearm (former § 12021, subd. (e)). In addition to other firearm and gang enhancements, the jury found that a principal personally and intentionally discharged a firearm and proximately caused great bodily injury and death to a victim. (§ 12022.53, subds. (d) & (e)(1).) The court imposed a sentence of life without the possibility of parole for murder, plus an additional 25 years to life for the firearm enhancement, plus 26 years for robbery. The court also imposed a restitution fine (§ 1202.4, subd. (b)) in the amount of $10,000, in addition to $11,661.38 in victim restitution (§ 1202.4, subd. (f)). On appeal, we struck the gang enhancements for lack of substantial evidence, and reduced Galloway's sentence by 10 years, but we otherwise affirmed the judgment. (See *Galloway*, *supra*, B232165, at p. 11.) Galloway did not contest the amount of the restitution fine either before the trial court or on appeal.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony murder doctrine. Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder

7

only if he actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill; or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248.) The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who would no longer be guilty of murder because of the new law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Galloway filed a petition for resentencing on October 24, 2019. The trial court summarily denied the petition on the ground that the record in the case showed that Galloway was the actual killer, and he therefore, as a matter of law, was not entitled to relief. On October 22, 2019, Galloway filed a motion for modification of his sentence, arguing that the court had erred when setting the amount of his restitution fine by failing to take into consideration his ability to pay, and requesting that the court reduce the amount of the fine to $200. The trial court denied the motion on the grounds that Galloway could earn enough money to pay the fine from wages earned in prison, and that his conviction was already final at the time he filed the motion.

## DISCUSSION

Galloway contends that the trial court erred by summarily denying his petition without appointing counsel, and by relying on the record in the case, including our prior opinion, as a ground for denying the petition. We reject these arguments. Galloway also contends that the trial court erred by denying his motion to reduce the amount of his restitution fine. This claim fails because the trial court lacked jurisdiction to decide the motion.

### A.     *Background on Section 1170.95*

Section 1170.95 allows a defendant serving a sentence for felony murder who would not be guilty of murder because of the new law to petition for resentencing. The statute requires a defendant to submit a petition affirming that he meets three criteria of eligibility: (1) He was charged with murder in a manner "that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine" (§ 1170.95, subd. (a)(1)); (2) He "was convicted of" or pleaded guilty to "first degree or second degree murder" (§ 1170.95, subd. (a)(2)); and (3) He "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective" as a part of Senate Bill No. 1437 (§ 1170.95, subd. (a)(3)). As described above, those changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been the actual killer, acted with the intent to kill, or been a major participant in the underlying felony and acted with reckless indifference to human life.

9

Upon receipt of a petition, the trial court first reviews it to determine whether it is facially sufficient (see § 1170.95, subd. (b)(2)), then reviews it to determine whether the petitioner has made a prima facie case for relief. (§ 1170.95, subd. (c).) If the petitioner meets this requirement, the court issues an order to show cause and holds a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d)(1).) At this final stage of the proceeding, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

## B. *The Trial Court Did Not Err by Denying Galloway's Petition Without Appointing Counsel, or by Relying on the Record of Conviction*

Galloway contends that the trial court erred by denying his petition without first appointing counsel to represent him, and by considering documents in the record of conviction, including our opinion in the direct appeal of his conviction, as a basis for denying the petition. We disagree. As we explained in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598 (*Lewis*), the trial court employs a two-step procedure for deciding whether a petitioner under section 1170.95 has made a prima facie case. (See *Lewis*, *supra*, 43 Cal.App.5th pp. 1139–1140; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-332, review granted, Mar. 18, 2020, S260493 (*Verdugo*).) First, the court may examine "documents in the court file or otherwise part of the record of conviction that are readily ascertainable" and "decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Verdugo*, *supra*, 44

Cal.App.5th at p. 329.)  Only if the court determines that the defendant has made a prima facie case under this standard does the right to counsel attach.  (*Id.* at pp. 332–333; *Lewis, supra*, 43 Cal.App.5th at pp. 1139–1140.)  The court then obtains briefing from both sides and decides whether the defendant has made a prima facie case that he is entitled to relief.  (*Verdugo, supra*, at pp. 328–329.)  This two-step procedure does not violate the petitioner's right to due process under the federal or state constitution.  (See *People v. Frazier* (Oct. 13, 2020, B300612) ___ Cal.App.5th ___ [2020 WL 6041867 at pp. *3–*5] [due process right to counsel in a postconviction proceeding applies only after the defendant has made a prima facie case].)

In this case, the trial court followed the procedure laid out in *Verdugo* and *Lewis* and correctly denied Galloway's petition on the ground that he was ineligible for resentencing as a matter of law.  The jury found true a felony-murder special circumstance (§ 190.2, subd. (a)(17)), which required the jury to find either that Galloway was the actual killer, that he acted with the intent to kill, or that he was a major participant in the robbery who acted with reckless indifference to human life.  (See § 190.2, subds. (b)–(d); *People v. Allison* (Oct. 2, 2020, B300575) ___ Cal.App.5th ___ [2020 WL 5868095 at p. *4] (*Allison*).)  These are identical to the requirements for a felony murder conviction under the newly revised section 189, subdivision (e).  (See *Allison, supra*, ___ Cal.App.5th ___ [2020 WL 5868095 at p. *4].)  Thus, the special circumstance finding shows as a matter of law that Galloway could still be convicted under the law as revised by

11

Senate Bill No. 1437, and that he is ineligible for resentencing.**2** (See *ibid.*)

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), our Supreme Court clarified its interpretation of the concepts of "major participant" and "reckless indifference to human life." In cases in which the defendant was not the actual killer, courts have divided over the question whether a defendant may challenge the validity of a pre-*Banks* and *Clark* felony-murder special circumstance finding in a petition under section 1170.95. (Compare *Allison*, *supra*, ___ Cal.App.5th ___ [2020 WL 5868095] and *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted Sept. 23, 2020, S264051 [rejecting § 1170.95 petitions for defendants with felony-murder special circumstance findings] with *People v. York* (2020) 54 Cal.App.5th 250, pet. for review filed Oct. 13, 2020, S264954, and *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835 [reversing denials of section 1170.95 petitions in cases involving felony-murder special circumstance findings].)

---

**2** Galloway's petition was facially defective in that he failed to check a box on the petition form asserting that he could no longer be convicted of murder because of changes to sections 188 or 189. In this circumstance, the statute provides that the trial court "may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).) Galloway contends that we should infer from the fact of his filing the petition that he believed he met all the statutory requirements. We need not decide this question because even if we deem the petition facially sufficient, Galloway's claims fail on the merits.

We reiterate our holding in *Allison* that such defendants are ineligible for resentencing under section 1170.95, but Galloway's case is much simpler. As described in our opinion in Galloway's direct appeal, all the evidence at trial indicated that Galloway, not Marcus, was Roh's actual killer, and that this was the basis of the jury's special circumstance finding. *Banks* and *Clark*, which did not call into question the validity of special circumstance findings in cases in which the defendant actually killed the victim, are irrelevant. Galloway is ineligible for resentencing under section 1170.95 as a matter of law.

In *People v. Cooper* (2020) 54 Cal.App.5th 106, 117–124, petition for review filed October 2, 2020, S264684 (*Cooper*), the First Appellate District disagreed with *Lewis* and *Verdugo* and held that all defendants who file a facially sufficient petition under section 1170.95 are entitled to appointed counsel. The facts of Galloway's case are a good example of why every other court that has examined the issue has reached the opposite conclusion. (See, e.g., *Lewis*, *supra*, 43 Cal.App.5th at pp. 1139-1140, review granted Mar. 18, 2020, S260598; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 327–332, review granted Mar. 18, 2020, S260493; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 897, review granted Aug. 12, 2020, S263219; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673–674, review granted July 8, 2020, S262481; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975–976; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177-1178, review granted June 24, 2020, S262011.) Even with counsel to represent him on appeal, Galloway has been unable to call into question the accuracy of the court's ruling. He alleges that the trial court made two errors: first, by describing Sanchez as a codefendant, and second, by minimizing

13

the importance of Sanchez's testimony.  The first error was a minor misstatement—Sanchez pleaded guilty to the robbery of Guerrero, but was not charged with murder or tried alongside Galloway and Marcus.  The second alleged error was an argument for the jury, and indeed, Galloway's trial counsel argued that the jury should disbelieve Sanchez because she was a drug user.  By finding Galloway guilty and the special circumstance true, the jury implicitly rejected this argument.  This is a sufficient basis for denying Galloway's petition:  "The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison, supra,* ___ Cal.App.5th ___ [2020 WL 5868095 at p. *6].)

C.    ***The Trial Court Lacked Jurisdiction over Galloway's Motion for a Modification of His Sentence***

Galloway filed a motion seeking a reduction of his restitution fine in October 2019, more than seven years after the judgment in his case became final.  "Generally, once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to vacate or modify the sentence. . . . Unless an exception to the general rule applies, the trial court did not have jurisdiction to rule on his motion and the appeal must be dismissed." (*People v. Torres* (2020) 44 Cal.App.5th 1081, 1084.)

Galloway seeks to escape the application of this rule by arguing that the trial court waived any jurisdictional issues by deciding the motion.  In support of this claim, he cites *People v. Delgado* (2017) 2 Cal.5th 544, 558–559 (*Delgado*), in which our

14

Supreme Court held that a party may forfeit a challenge to a court's acts in excess of its jurisdiction by failing to object. In *Delgado*, the trial court issued an order providing for correctional officers to be present during meetings between the defendant and his attorney in order to protect the attorney's physical safety. All parties agreed that the officers would be bound by attorney-client privilege to keep secret the contents of the discussions. (*Id.* at p. 558.) After approximately 23 meetings under these conditions before and during trial, the defendant challenged the court's jurisdiction to issue the order for the first time on appeal. (*Id.* at pp. 558–559.) The Supreme Court rejected the argument in part because acts in excess of jurisdiction are subject to waiver and forfeiture. (*Ibid.*) In this case, by contrast, nothing in the record indicates that the prosecution acquiesced in the trial court's decision to rule on Galloway's motion, or was even aware that the trial court was planning to make a ruling. Galloway's argument implies that the trial court, by acting in excess of its jurisdiction, waived any right by the prosecution to object to that action. That is not the law.

Galloway also argues that general equitable principles allowed the trial court to rule on Galloway's motion despite the jurisdictional issues. We disagree. The statute regarding restitution fines has not changed in relevant part since the court imposed the fine in 2011, nor since Galloway committed the murder in 2008. Then, as now, the statute forbade the sentencing court from considering the defendant's ability to pay as a reason not to impose a fine, but allowed the court to consider inability to pay as a reason whether to "increas[e] the amount of the restitution fine in excess of the minimum fine." (§ 1202.4, subd. (c); Stats. 2007, ch. 302, § 14, p. 3072 [version of statute in

15

effect in 2008].) There is no reason that Galloway could not have made this same argument before the trial court at the time of sentencing or in his original appeal. Furthermore, we disagree that the equities favor Galloway's position. Galloway was convicted of murder and the restitution fine was imposed because he shot and killed the cashier of a T-shirt store, apparently because he was angry that she had put the money from the till into a safe just before he robbed her. In this circumstance, a $10,000 restitution fine is hardly excessive.

## DISPOSITION

In Galloway's appeal of the denial of his petition for resentencing under section 1170.95 (case No. B303405), the trial court's order is affirmed. In his appeal of the denial of his motion for reconsideration of his sentence (case No. B303636), the appeal is dismissed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.

16

SINANIAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.